Honorable court of record
IN THE UNITED STATES DISTRICT COURT
**FOR THE WESTERN DISTRICT OF NEW YORK**

*[FILED stamp: OCT 20 2010, MICHAEL J. ROEMER, CLERK, WESTERN DISTRICT OF NY]*

1:09-CR-00121-001

SHANE C. BUCZEK, a U.S. TRUST
        Petitioner

shane-christopher: buczek,
as third-party intervener and Grantor / Beneficiary

V.

UNITED STATES OF AMERICA

**MANDATORY JUDICIAL NOTICE of 73rd CONGRESS MARCH 9-JUNE 16, 1933 1ST SESSION VOL.9 SENATE DOCUMENTS "CONTRACTS PAYABLE IN GOLD "Court to take Judicial Notice under Federal Rules of Evidence 201(d) and (f)
STATE OF MIND**

**\*\*Demand is hereby made to The United States Attorney's to Answer within \*10 days\***

**MANDATORY JUDICIAL NOTICE OF 73rd CONGRESS MARCH 9-JUNE 16, 1933 1ST SESSION VOL.9 SENATE DOCUMENTS "CONTRACTS PAYABLE IN GOLD" STATE OF MIND** \*Failure to answer is silence. Silence can only be equated with fraud where there illegal and moral duty to speak, or when inquiry left unanswered would be intentionally misleading."US v Tweel (1977)550 F 2d 297.\* (10) days to answer and (3) days Grace **OPPORTUNITY TO CURE \*COURT TO TAKE JUDICIALNOTICE UNDER FEDERAL RULES OF EVIDENCE 201 (D) AND (F)**

In the matter of SHANE C BUCZEK, a U.S. Trust, Petitioner, shane-christopher: buczek, heretofore and hereafter "Petitioner", notices the court to take Mandatory Judicial Notice of **CONTRACTS PAYABLE IN GOLD MARCH 9TH,1933 73RD CONGRESS 1ST SESSION"**, under Federal Rules of Evidence 201 (d) and (f). See Attachment "A" **SENATE DOCUMENT**

I am a peaceful man and inhabitant of the creation and most often located in the geographic region known as New York Republic of America; SHANE C. BUCZEK is a vested interest of the United States of America and/or the United States; I am settlor and co-beneficiary to SHANE C. BUCZEK for the mutual beneficial use of the United States of

America and/or the United States by and through holders of offices of the public trust, public trustees and myself. Any attempt to coerce, trick, deceive, induce by fraud or otherwise move me to engage in disposition of the vested interest(s) of the United States of America **shall be considered an act of war, treason, and sedition against the United States of America and will be reported to the appropriate public trustees charged with protecting same.**

I, shane-christopher: buczek, declare under penalties of perjury under the laws of these United States of America that the foregoing is true and correct to the best of my knowledge, is made in good faith and is admitted if not rebutted. I certify that the facts stated herein are true and correct under the penalty of perjury as provided by 28 USC Section 1746, that I am over the age of 18, and that I have firsthand knowledge first hand of the facts stated herein are true and correct.

**\*\*Demand is hereby made to The United States Attorney's to Answer within \*10 days\***

**\*Failure to answer is silence. Silence can only be equated with fraud where there is legal and moral duty to speak, or when inquiry left unanswered would be Intentionally misleading."US v Tweel (1977)550 F 2d 297.\* (10) days to answer and (3) Days Grace OPPORTUNITY TO CURE \***

**\*The Court acting as Trustee, through this motion is instructed by the Grantor/Settlor to Compensate the Beneficiary Shane-Christopher family Buczek at the rate of $1,000.00 per day for every day that the Beneficiary Shane Christopher family Buczek is financially damaged by the invalid charging instruments mistakenly enforced by this court which such charging Instruments and accompanying resulting orders have prevented the Beneficiary Shane from working to earn a living.\***

**In Trust,**

By: /s/ *friend of the Court*
**Office of Executor**
shane-christopher: buczek
as third party intervener and
Grantor/Beneficiary/Petitioner for:
SHANE C. BUCZEK a US TRUST
All rights reserved Without Prejudice
Without recourse UCC 1-308
October __20th__, 2010


See Attachment "A" 73rd CONGRESS MARCH 9-JUNE 16, 1933 1ST SESSION VOL.9 SENATE DOCUMENTS "CONTRACTS PAYABLE IN GOLD"

## CERTIFICATE OF SERVICE

On this the 18th day of October 2010, a true and correct copy of **MANDATORY JUDICIAL NOTICE of Public Law 80-772 is invalid Court to take Judicial Notice under Federal Rules of Evidence 201(d) and (f)** was **personally filed stamped 1:09-CR00121-001** delivered to the Clerk of the Court and the Clerk will serve AUSA by electronic filing.

# ATTACHMENT "A"

# 73D CONGRESS : : : : 1ST SESSION

MARCH 9–JUNE 16, 1933

# SENATE DOCUMENTS

# VOL. 9

UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON: 1934

{ 73d Congress } SENATE { Document No. 43 }
{ 1st Session }

# CONTRACTS PAYABLE IN GOLD

AN ARTICLE ENTITLED
"CONTRACTS PAYABLE IN GOLD", BY GEORGE
CYRUS THORPE, SHOWING THE LEGAL
EFFECT OF AGREEMENTS TO
PAY IN GOLD



UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON : 1933

### SENATE RESOLUTION NO. 62

Submitted by Mr. SHIPSTEAD

IN THE SENATE OF THE UNITED STATES,
*April 17 (calendar day, April 24), 1933.*

*Resolved,* That the manuscript entitled "Contracts Payable in Gold", by George Cyrus Thorpe, showing the legal effect of agreements to pay in gold, be printed as a Senate document.

Attest.

EDWIN A. HALSEY,
*Secretary.*

II

# CONTRACTS PAYABLE IN GOLD

By GEORGE C. THORPE, Washington, D.C.

Holders of commercial paper and parties to contracts, involving billions of dollars, stipulating for payment in dollars in gold, or "in American gold coin" or "in gold coin of the United States of or equal to the standard of weight and fineness existing" on a certain date, or "in gold and silver coin, lawful money of the United States", etc., are interested in the legal import of the qualifying phrases, in the face of present suspension of gold payments and the possibility of a depreciated currency.

In a recent English case, Mr. Justice Farwell, in chancery, has held, under a bond providing for payment of "the sum of 100 pounds sterling in gold coin of the United Kingdom of or equal to the standard weight and fineness existing" on the date of the bond, there was an obligation to pay 100 pounds in gold currency, satisfied by tendering 100 pounds in any form that was legal tender in England. (In re Societe Intercomunale Belge d'Electricite.)

A similar conclusion was reached in many American cases in State courts when their jurisdiction first was invoked to give effect to the effort of business men to avoid loss through compulsory acceptance of a tender of depreciated currency in payment of debts incurred for a gold consideration, in the era of the "greenbacks."

The laws of the United States recognize two kinds of money, namely coin and paper. The term "dollars in specie" means gold or silver coined dollars. "Dollars in currency" means dollars in notes or any paper money current in the community. (*Trebilcock v. Wilson* (1872) 12 Wall. 687, 20 L. Ed. 460.)

A Missouri contract of June 17, 1862, to pay "in the current gold coin of the United States, in full tale and count, without regard to any legal tender that may be established or declared by any law of Congress" was held satisfied by payment in the nominal value in any legal tender money. The court said that it was not a contract to be paid in bullion, or in so many pounds or ounces of gold, but in a certain number of dollars, in coin. The transaction did not regard gold as a commodity but as money. The Legal Tender Act had made Treasury notes of like value with gold. As a legal medium there could be no distinction between notes and gold. The theory of the suit brought on contracts payable in specific chattels is that the court's judgment is not for payment in articles in kind, but for the damages resulting to the creditor in consequence of breach of contract, and this judgment can be paid off and satisfied in whatever money the law has clothed with the attributes of legal tender. Although it was a notorious fact that for purposes of trade and in commercial transactions a difference was made between Treasury notes

1

and specie coin, whatever fluctuations might arise from extraneous causes, the debtor's right to pay in whatever medium he chooses could not be affected. In administering the law, it was necessary that gold and Treasury notes should be considered equal. (*Appel v. Woltmann* (1860) 38 Mo. 194.) A note payable "in gold" was held enforceable only for the face value of the note payable in any lawful money, and a judgment for a premium on gold in addition was declared invalid. (*Henderson v. McPike* (1864) 35 Mo. 255.)

A ground rent payable in "lawful silver money of the United States of America" was satisfied in Pennsylvania by payment of Treasury notes of the issue of February 25, 1862, the court saying that the addition of the word "silver" was merely descriptive of the "lawful money" and bound neither party. It meant simply a kind of lawful money in which the tender could be made, not a prohibition of other forms of money. It was declared that no party could exact, and no party consent to, a stipulation impugning the power of the law-making branch of the Government. (*Shollenberger v. Brinton* (1866) 52 Pa. St. 9.)

In another Pennsylvania case, the defendant promised to pay a certain number of dollars, "silver money of the United States, each dollar weighing 17 pennyweights and 6 grains at least." Upon the plaintiff's demand for a certain amount due in 1863, the defendant tendered Treasury notes of the issues of February 25, 1862, and July 11, 1862. The plea of tender "in lawful money of the United States" was sustained. (*Mervine v. Sailor* (1866) 52 Pa. St. 9.)

The decision was the same way in another action in Pennsylvania on a promissory note wherein there was a promise to pay a certain number of dollars "in gold, without defalcation", and the plaintiff demanded gold, or if the defendant had not the gold, that he would accept United States legal-tender notes, adding the premuim on gold, 33 percent. (*Laughlin v. Harvey* (1866) 52 Pa. St. 9, 30.)

In the same State, plaintiffs had deposited gold in the defendants' bank and received a certificate as follows:

———— has deposited in this office ———— dollars, gold, payable to the order of herself on surrender of this certificate, in like funds, with interest.

On demand for gold, the defendants offered legal tender notes, which was held sufficient. (*Sanford v. Hays* (1866) 52 Pa. St. 9, 26.)

In a Pennsylvania action in assumpsit on a bank's promise to pay $14,145, the paper bearing on its margin "$14,145 specie", it was admitted that the consideration was gold and that "specie" meant payable in coin, gold or silver. A tender of legal tender notes was held good. (*Graham v. Marshall* (1866) 52 Pa. St. 9, 28.)

In assumpsit for money had and received, gold having been pledged as security, it was held that the damages should not include any premium on gold, and that, even if the action was in the form of trover only the value at the time of conversion could be allowed as damages. (*Frothingham v. Morse* (1864) 45 N.H. 545.)

In New York, the words "in specie, gold, and silver coin" were held not to effect the right to discharge an obligation, for the payment of a certain number of dollars, by paying in legal tender notes. (*Murray v. Harrison* (1867) 47 Barb. 484, affirmed (1868) 52 Barb. 427.) So also a bill of exchange payable "in specie or its equivalent" could be paid in legal tender notes called "greenbacks." (*Jones v. Smith* (1867) 48 Barb. 552.)

In an Indiana case, a contract for payment in gold also provided that if paid in paper the amount thereof necessary to purchase the gold at the place of payment would be required. In sustaining a tender in paper money in the nominal amount of the debt the court said that when Treasury notes were made legal tender in payment of debts they were made the equivalent of coin as means of payment in all but the cases excepted by the law. "This, and this only, is meant by making them legal tender." For that purpose a Treasury note dollar could accomplish all that a gold coin dollar could accomplish, for by the law the latter would pay no more than $1 of indebtedness. The court could not know that its judgment would be paid in paper. There could be no warrant for a judicial assumption that the judgment debtor would discharge the judgment by payment in paper. Gold coin might be used. The court could not know that paper money would not be withdrawn from circulation before satisfaction of the judgment. (*Brown v. Welch* (1866) 116 Ind. 117.)

In Texas, a note made payable "in gold" was held dischargeable by the payment of legal tender notes; judgment on such a note could not be rendered for specie. (*Shaw v. Trunsler* (1867) 30 Tex. 390.) In the same State, the word "specie" in a judgment in an action on a contract providing for payment of $500 in specie, or $894 in United States currency, was held surplusage that could be struck out on appeal. (*Flournoy v. Healy* (1869) 31 Tex. 590.)

But the Supreme Judicial Court of Massachusetts was reversed in entering judgment for an amount in Treasury notes, equal in market value to the amount of coined gold reserved as rent in a lease wherein the contract provided for a yearly rent of 4 ounces 2 pennyweights and 12 grains of pure gold in coined money, the Supreme Court of the United States saying that the contract was for the payment or delivery of a specified weight of pure gold, solvable in coined money, and the judgment should have been entered for coined dollars and parts of dollars, instead of Treasury notes equivalent in market value to the value in coined money in the stipulated weight of pure gold. (*Dewing v. Sears* (1871) 11 Wall. 379, 20 L.Ed. 189.)

Earlier, but after the passage of the Legal Tender Acts, the Supreme Court had sustained the proposition that express contracts to pay coined dollars could be satisfied only by the payment of coined dollars, and that such contracts were not "debts" which could be satisfied by the tender of Treasury notes. (*Bronson v. Rodes* (1869) 7 Wall. 229, 19 L.Ed. 141.)

Our highest court said in another case that when it appears to be the clear intent of a contract that payment or satisfaction shall be made in gold and silver, damages should be assessed at the sum agreed to be due, in gold and silver coin, and judgment should be entered in coin for that amount. (*Butler v. Horwitz* (1869) 7 Wall. 258, 19 L.Ed. 149.)

*Bronson v. Rodes*, supra, became the leading case, followed by later decisions in State courts. But before that precedent there were decisions in State courts which enforced the qualifying phrase.

Thus under a contract to return gold, the promissor was held bound to return the things specified, as he would be bound to return a specific quantity of any other certain commodity. The court's view was that "paper promises" having been substituted for a national money consisting of gold and silver coins, those metals had disappeared as

4 "CONTRACTS PAYABLE IN GOLD"

current money and no longer possessed the functions of national instruments of exchange, becoming merely articles of commerce, having the same characteristics and being liable to the same legal disposition as other articles of commerce when subject matter of contracts. (*Bank of Commonwealth* v. *Van Vleck* (1867) 49 Barb. 508.)

And a stipulation to pay rent "in American gold coin" could not be discharged by payment in legal tender notes of a nominally equal amount with the gold promised, unless it should happen that the notes were at par with American gold in the market. (*Myers* v. *Kauffman* (1868) 37 Ga. 600, 95 Amer. Dec. 367.)

A note given in August 1863 providing—

> Six months after date, without grace, for value received, I promise to pay to the order of A the sum of ———— dollars in gold coin of the standard value of 1860 of the United States of America, with interest at ————. And if said principal and interest is not paid in gold coin, as above stated, then, for value received, I promise to pay to the order of said A, in addition thereto, and as damages, such further amount and percentage as may be equal to the difference in value at ———— market between such gold coin and paper evidence of indebtedness of the States or of the United States that are or may be hereafter made a legal tender in payment of debts by the laws of this State or of the United States—

was construed as manifesting a first intention of the payee to secure a payment in gold if such payment could be enforced lawfully; and, secondly, if that could not be done, payment in legal tender notes at their value (at the place stated in the note) when converted into gold. (*Lane* v. *Gluckauf* (1865) 28 Cal. 288, 87 Amer. Dec. 121.)

The plaintiffs, depositors in defendants' bank, alleged a banking custom in the District of Columbia of receiving gold and silver coin and money currency to be returned in kind, separate entries being kept as to the classes of money deposited, and balances maintained as to those classes; in February 1864, having a balance in coin, they drew checks for coin which the defendants refused to pay in coin; that coin at that time was worth $1.57 in Treasury notes. Plaintiffs sought compensation in damages for injuries resulting by the defendants' refusal to pay the checks. Defendants plead: (1) That they did not promise as alleged, and (2) that, upon presentation of the checks, they offered to pay in Treasury notes made legal tender in payment of debts by the act of February 25, 1862.

The trial court excluded testimony offered to prove the alleged custom as to the difference in receiving and paying deposits in coin and paper money, and instructed the jury:

> If the jury find from the evidence that the defendants were bankers in 1861 and 1862 and that the coin mentioned in the declaration was deposited with said defendants as bankers, to be paid in coin, said deposit created a debt from the defendants to the plaintiffs which could be discharged by payment or offer to pay the same in legal tender notes; and if the jury further find that said tender was made, the plaintiffs are not entitled to recover."

In affirming judgment for the defendants, the Supreme Court said that the clear inference from the whole testimony was that the deposits were made without condition or special agreement of any kind, and that in such cases the law was well settled that the depositor parts with title to his money and loans it to the bank, and the transaction is not affected by the character of the money in which the deposit is made. The bank becomes liable for the amount of the debt, which can be discharged by such money payment as is by law a legal tender. (*Thompson* v. *Riggs* (1867), 5 Wall. 663, 18 L.Ed. 704.)

"CONTRACTS PAYABLE IN GOLD"                                    5

However, the court also said that contracts between a banker and his customers doubtless are required to be performed, and must be construed in the same way as contracts between other parties.

When the banker specially agrees to pay in bullion or in coin he must do so or answer in damages for its value; and so if one agrees to pay in depreciated paper the tender of that paper is a good tender, and in default of payment the promisee can recover only its market value and not its nominal value. (Some case.)

All of these American decisions were rendered long before the enactment of the Parity Act of 1900, providing that—

The dollar, consisting of 25 8 grains of gold nine-tenths fine shall be the standard unit of value, and all forms of money issued or coined by the United States shall be maintained at a parity of value with this standard, and it shall be the duty of the Secretary of the Treasury to maintain such parity.

This has not been repealed. Other existing statutes provide:

(a) The gold coins of the United States shall be legal tender in all payments at their nominal value when not below the standard weight and limit of tolerance provided by law for the single piece, and, when reduced in weight below such standards and tolerance, shall be legal tender at valuation in proportion to their actual weight. (R.S., sec. 3585.)

(b) Silver dollars coined under the act of February 28, 1878, together with all silver dollars coined by the United States of like weight and fineness prior to the date of such act shall be a legal tender, at their nominal value, for all debts and dues, public and private, except where otherwise expressly stipulated in the contract. But nothing in this section shall be construed to authorize the payment in silver of certificates of deposit issued by the Secretary of the Treasury for deposits of gold bullion. (Act Feb. 28, 1878, c. 20, sec. 1, 20 Stat. 25.)

(c) The silver coins of the United States in existence June 9, 1879, of smaller denominations than $1 shall be a legal tender in all sums not exceeding $10 in full payment of all dues, public and private. (Act June 9, 1879, c. 12, sec. 3, 21 Stat. 8.)

(d) The minor coins of the United States shall be a legal tender, at their nominal value, for any amount not exceeding 25 cents in any one payment. (R.S. sec. ...)

(e) Various commemorative silver and gold coins (50-cent piece, gold dollar and gold $2.50 pieces), coined at the mints of the United States under authority of law, are a legal tender in any payment to the amount of their face value. (Various statutes compiled in section 461 of title 31 of the U.S. Code.)

(f) Gold certificates of the United States payable to bearer on demand shall be legal tender in payment of all debts and dues, public and private. (Act Dec. 24, 1919, c. 15, sec. 1, 41 stat. 370.)

(g) United States notes shall be lawful money, and a legal tender in payment of all debts, public and private, within the United States, except for duties on imports and interest on the public debt. (R.S. sec. 3588, derived from statutes passed in 1862 and 1863.)

(h) Demand Treasury notes authorized by the act of July 17, 1861, chapter 5, and the act of February 12, 1862, chapter 20, shall be lawful money and a legal tender in like manner as United States notes. (R.S. sec. 3589, derived from acts of 1861 and 1862.)

(i) Treasury notes issued under the act of July 14, 1890, chapter 708, shall be a legal tender in payment of all debts, public and private, except where otherwise expressly stipulated in the contract. (Act July 14, 1890, c. 708, sec. 2, 26 stat. 289.)

(j) Treasury notes issued under the authority of the acts of March 3, 1863, chapter 73, and June 30, 1864, chapter 172, shall be a legal tender to the same extent as United States notes, for their face value, excluding interest: *Provided,* That Treasury notes issued under the act last named shall not be a legal tender in payment or redemption of any notes issued by any bank, banking association, or banker, calculated and intended to circulate as money. (R.S. 3590, derived from acts of the dates stated in this section.)

Is there anything in the legislation subsequent to the decision in *Bronson* v. *Rodes*, supra, which would require a different decision as

6.         "CONTRACTS PAYABLE IN GOLD"

to the legal import of such phrases as "dollars payable in gold coin," etc.?

In forming its opinion on the meaning of that phrase, the court found it "necessary to look into the statutes regulating coinage". After reviewing such statutes as it deemed pertinent to the inquiry concerning the import of the quoted phrase, it concluded that the contract for payment in gold should be enforced. The assertions in the court's opinion that: (a) Gold and silver coins are legal tender in all payments; (b) there are two descriptions of money in use, authorized by law, and both made legal tender in payments; and (c) the statute denomination of both descriptions is dollars, but they are essentially unlike in nature, the coined dollar being a piece of gold or silver of a prescribed degree of purity and weighing a prescribed number of grains, and the note dollar being a promise to pay a coined dollar though not a promise to pay on demand or at any fixed time, or, in fact, convertible into a coined dollar, are equally true at the present time, within the letter of the above-quoted statutes relating to legal tender, without regard to the parity act.

Does the parity act, quoted above, make specie and currency equivalent if in fact one or the other should become depreciated in actual market value?

The court said, that case, that it was "impossible, in the nature of things, that these two dollars should be actual equivalents of each other", and that there was nothing in the Currency Acts "purporting to make them such." How far they were from being actual equivalents had been stated earlier in the opinion, i.e., $1 in coin equivalent to $2.25 in United States notes.

Under similar circumstances in the future the court still could say, "It is impossible, in the nature of things, that these two dollars could be actual equivalents of each other"; but could it say that there is nothing in the currency laws "purporting to make them such", in view of the parity act?

The parity act does not declare that all forms of money issued or coined by the United States are at a parity of value with the standard gold dollar, for that would be declaring to be a fact that which is not, or may not be, the fact, or cannot be the permanent fact. Value is purchasing power and that in turn implies varying degrees of willingness of holders of consumable commodities to exchange them for money. If both coin and currency are in circulation, the holder of a commodity desired by different groups of persons, one group possessing specie and the other group currency, will surrender in exchange for money a larger quantity or a better quality of the commodity for, say, specie, than for currency, of equal nominal amounts. No law declaring parity can achieve actual equal acceptability, or purchasing power. And so the parity act, in declaring that "all forms of money issued or coined by the United States shall be maintained at a parity of value with" the standard gold dollar, might be construed as the declaration of a policy or a mission, and the concluding clause, "it shall be the duty of the Secretary of the Treasury to maintain such parity", as the definition of a duty.

When gold is unobtainable and currency in circulation, can it be said that specie and currency are at a parity? When both specie and currency are in circulation in such proportions that the citizens much prefer specie and actually will pay a premium therefor, can it

...d that these two kinds of money are at a parity of value with the ...ard gold dollar? If the Parity Act can be said to purport to ...e the two kinds of money actual equivalents of each other, but if ...n actuality the two kinds of dollars are not, or may not be, equiv-...nts, will the Supreme Court's judgment be the same, as before the ...age of the Parity Act, if called upon to construe the legal import ...promises to pay in specie? May it not again refuse to "suppose ...it was intended by the provisions of the Currency Acts" and the ...rity Act of 1900, "to enforce satisfaction" of a contract to pay in ...n "by the tender of depreciated currency of any description ...ivalent only in nominal amount to the real value of the bullion or ...the coined dollars", as in *Bronson* v. *Rodes*, supra?

...Or shall we hear that the Parity Act is the declaration of something ...ich must be accepted as fact, even though that be contrary to the ...ration of economic laws?

...The power to issue currency is not specifically given in the Con-...itution, the express authority to "emit bills" originally in the ...Resolutions" before the Constitutional Convention having been ...icken out on motion after considerable debate. Daniel Webster ...id in the Senate in 1836 that although no express prohibition from ...aking anything but gold and silver a tender in the payment of ...debts is applied to Congress, yet as Congress has no power granted ...it in that respect but to coin money and regulate its value and that ...foreign coin, it clearly has no power to substitute paper or anything ...e for coin as a tender in payment of debts and discharge of con-...tracts. (Webster's Works, vol. 4, p. 271.) For the first 70 years of ...this Government's existence there was no national currency, all trans-...actions of the Government having been in gold and silver coin. ...Paper currency used in private transactions consisted almost entirely ...of bank notes issued by numerous independent corporations variously ...organized under State legislation, of various degrees of credit and ...very unequal resources, administered often with great and not in-...frequently with little skill, prudence, and integrity. National laws ...prohibiting the receipt or disbursement of anything except gold and ...silver in the transactions of the Government and State laws requir-...ing the exemption of bank notes in coin on demand prevented the ...disappearance of gold and silver from circulation. (See *Veazie Bank* ...v. *Fenno* (1869) 8 Wall. 533, 19 L. Ed. 482.) As a matter of history, ...paper money in the shape of bills of credit was issued by the Colony ...of Massachusetts about 1690 to pay the Army returning unexpect-...edly from a disastrous expedition against Canada. All the Colonies, ...at various times, followed this example. Sometimes these bills were ...made legal tender in the payment of all debts. Some bills were re-...ceivable in all payments of taxes and dues to the Government. Some ...were nominally payable in specie. Generally a certain fund was ...pledged for their redemption. But some were issued on the mere ...credit of the issuing Government.

...Although the power to issue currency was not expressly given to ...Congress by the Constitution, Congress has found the power implied ...and has called it into full activity since 1861 in undertaking to supply ...a national currency for the entire country. It has made currency ...receivable in payment of debts to itself; has provided for its redemp-...tion and its uniformity in description and value. (See *Veazie Bank* v. ...*Fenno*, supra.) To the enumeration of the powers of Congress is

8           "CONTRACTS PAYABLE IN GOLD"

added that of making all laws which shall be necessary and proper for carrying the enumerated powers into execution, and all other powers vested by the Constitution in the Government of the United States, or in any department or officer thereof. (United States Constitution, art. 1, sec. 8, cl. 18.) The "sound construction of the Constitution must allow to the National Legislature that discretion, with respect to the means by which the powers it confers are to be carried into execution, which will enable that body to perform the high duties assigned to it in a manner most beneficial to the people. Let the end be legitimate, let it be within the scope of the Constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the Constitution, are constitutional." (*M'Culloch v. State of Maryland* (1819) 4 Wheat. 316, 4 L. Ed. 579.)

So Congress has the implied power to issue currency and to provide for uniformity in description and value of its currency, as well as the express power to coin money and regulate the value thereof; but do those powers include the power to make the coined money, the value of which it can regulate, the exact equivalent of its currency, for the uniformity in description and value of which it can "provide"? Is this third power implied as "necessary" within the doctrine of *M'Culloch v. Maryland*?

The regulation of the value of coined money consists in fixing the classes of coins that shall be issued and a standard of measurement of specie. Similarly, it is possible to classify bills or notes issued or to be issued and to declare the Government's promises as to their redemption and their receivability by itself in governmental transactions or in the payment of debts. For some 70 years of the Government's existence Congress acted under only one of these powers—that of coining money and regulating its value. Then it acted upon the other power—that relating to currency. The exercise of these different powers resulted in two kinds of national "money": (See *Bronson v. Rodes*, supra). But they did not produce two kinds of money of equal value—equal acceptability, equal purchasing power. Between 1862 and 1866 the premium on gold rose and fell from 30 to 160 percent. (See *Shollenberger v. Brinton* (1866), 52 Pa. St. 9, 33.) If "money" is the medium for effecting exchanges and is a measure of value, when the law made both specie and currency legal tender without actual equal purchasing power, gold became a mere commodity or article of commerce (see *Bank of Commonwealth v. Van Vleck*, supra) since it had inherent value as a metal, while currency had no inherent value, only conceptional value as ideal money. But a uniform medium of exchange is essential to the commerce and prosperity of every civilized and commercial people. Money as such is of value, or is in demand, not because it is more valuable than the quantity of property it will purchase, but because it readily can be exchanged for any article. (See *Brown v. Welch*, supra). The existence of two kinds of money, lacking uniformity of exchangeability, created an impossible situation, or, at least, a situation which tended to nullify the purpose of the legal tender laws. Obviously, some law was necessary to integrate the currency and legal tender laws.

The enumerated power from which the power to pass such a law as the parity act may be thought to be implied is, of course, the power

10          "CONTRACTS PAYABLE IN GOLD"

scribing its usability as money. And a contract to pay dollars "in gold" or in any other form of money of the United States, tacitly incorporates into that contract the parity act declaring all forms of money issued or to be issued by the United States at a parity. Hence the courts, in construing such a contract, must read into that contract the parity act, and if the promisee brings an action on the contract, the defendant's plea that he has tendered in payment any money that is lawful tender under the laws of the United States, is good, since all forms of money are at a parity and the defendant's plea, in effect, is that he has tendered the equivalent of the thing promised.

Furthermore, although in *Bronson* v. *Rodes*, supra, the Supreme Court said that "when contracts made payable in coin are sued upon judgments may be entered in coined dollars and parts of dollars" it is doubtful if it could so rule now, in view of the necessity of reading into the contract the parity act, for the court would be bound to recognize that dollars coined or issued by the United States are at a parity, from which it follows that judgments in all such cases must be for dollars, or for dollars and parts of dollars, without qualification as to coin or paper. If the promise to pay so many dollars in gold be restated as two promises, one to pay dollars and the other to pay in gold coin, the courts must read into those two promises the existing pertinent laws at the time of the demand, and give judgment on the promise to pay dollars (which may be satisfied by payment or tender in any lawful money that is legal tender), and give no effect to the promise to pay in gold coin since under the laws the second promise adds nothing to the first promise.

In other words, the contract creates an obligation to pay dollars in gold, satisfied by tendering the stated number of dollars in any form that is legal tender in the United States.

O

*And what do ya think of that!*

"CONTRACTS PAYABLE IN GOLD"                9

to coin money and regulate its value. The end sought to be accomplished is to maintain as "money" that which Congress expressly is empowered to coin, for that power is to "coin money" and not merely to stamp coins. The parity act became necessary in order to maintain the circulation of specie as money and in order effectively to regulate the value of coined money. The end sought to be accomplished by the parity act, therefore, is legitimate and within the scope of the Constitution. The parity act is an appropriate means plainly adapted to the end in view, i. e., to standardize money for use as a national medium of exchange. It is only by virtue of law that gold coin is money or legal tender; it is only by virtue of law that paper notes are money or legal tender; and it is only by virtue of law that either coin or paper has a declared value; and only by virtue of law can coin and paper be maintained at a parity in order to afford a proper medium of exchange. A parity law therefore is a necessary complement to the currency laws.

The ultimate ownership of all property is in the State; individual so-called "ownership" is only by virtue of Government, i. e., law, amounting to mere user; and use must be in accordance with law and subordinate to the necessities of the State. The fact that citizens, at a given time, may prefer specie to currency, or vice versa, can not prevent Congress from enacting those laws which it deems necessary to the maintenance of a proper monetary system. If the law makes specie and currency equivalent for purposes of payment, a failure to pay a given sum in specie, according to contract, cannot possibly beget an obligation to pay a greater sum in legal-tender notes, whatever premium men may choose to give for gold, when forced to obtain it for a specific purpose, or when impelled by a spirit of speculation, or by distrust of Government. (*Brown* v. *Welch*, supra.)

While the courts cannot control our citizens' preferences for one kind of money over another kind, or prevent them from giving a premium for the one or the other kind of money, when the fiscal affairs of the Government necessitate the adoption of a certain policy, expressed in constitutional legislative enactment, such as the maintenance of a monetary system consisting of specie and currency, to be acceptable interchangeably as to the value of the dollar, the courts should not give effect to a stipulation impugning the power of the legislature to make such laws, and should not apply those laws to the construction of contracts in such a way as to defeat the legitimate purposes of those laws, upon the enforcement of which the very existence of the Government may depend, or, at least, the aggregate well-being of the whole people is contemplated.

As it is not strictly correct to say that a contract is "invalid" merely because the courts will not enforce it, since enforcement may be withheld from valid promises because some provision of law prohibits enforcement, such, for example, as the statute of limitations, or the want of a legal consideration, valid contracts may be made and carried out between parties, without regard to legal limitations, so long as the jurisdiction of courts is not invoked to enforce the agreement. But when judicial enforcement is sought, the courts must find all pertinent constitutional laws tacitly written into every contract they construe.

So a contract to pay dollars tacitly includes the laws of the United States defining "dollar" and regulating the value thereof and pre-

Official Website of Congressman Brian Higgins — https://higgins.house.gov/mbin/formproc.pl?/brianhiggins/email-me.tx...

E-Newsletter Sign Up [     ]    Search [Search] 

Home   Meet Brian   **Constituent Help Center**   Western New York   Media Center   Legislation & Issues   Contact

contact

Email Me - Thank You

The following information has been submitted:

**Name:** Richard Buczek richard Buczek

**Address:** derby road derby, NY 14047 [zip4]

**E-mail:** paulsilver@aol.com
**Telephone:** 716-870-0453

Would you like a written response: YES

**Message Subject:** false arrest no jurisdiction
**Message Text:** Dear Mr. Higgins:

letter we want you to have. Civil Rights Case 09-cv-1129 Dear Mr. Bruce, I read your letter to me ement. You stated that you conducted your own investigation into the Harley G. Lappin BOP Letter it was a fabrication. Did your investigation entail more than one phone call? A government employee doing more than one call would be shocking. Mr. Bruce, would you mind placing your findings in it form, sworn under the pains and penalties of perjury and signed by a notary and placed into the record? Also, kindly ask the same for your FBI friend to submit an affidavit under the penalties of perjury. To satisfy everyone's curiosity, perhaps we should subpoena Harley Lappin, B.O.P. Director, his computer and his e-mail records to find out for sure and ask him under oath whether he was involved in any way with that email. But more importantly, it was the content within that e-mail that is not a fabrication. Did your due diligence take you into the Law library to look up the Congressional records to support your fantasy? As you know I have challenged the subject matter jurisdiction of this action. The burden to prove you have it now falls to you. Therefore, show me the certified documents from the Congressional Records Office or yours in particular; concerning Title 18, the amending of H.R. 3190, on May 12th, 1947, that shows a roll call of 218 members of the House of Representatives that passed with a Constitutionally seated Quorum. Mr. Bruce, the Roll Call shows only 44 members were present. A person with an experience is never at the mercy of a person with an opinion. I have the Certified Documentation and proof. I have done my homework and conducted my research. That is what evidentiary hearings are all about. We will see who is playing Pinocchio shortly. Isn't it nice to know you have been living a lie all this time without jurisdiction and without protective immunities for all these years? I suspect however, you have known this for some time. Meanwhile the Civil Case marches on. Your veiled threats in your letter never cease to amaze me. You are a bully that needs to meet his match. The paperwork in this case is your match. Lastly, it amazed me further what you omitted in your letter. You failed to show me your Oath of Office, or that you are registered as a foreign agent under the Foreign Registration Act of 1938, Green Card, Bonding agent, or that Title 18, Section 1344 lacks the supporting CFR's to undergird the statute, or that you are conducting a prosecution fraud using Counterfeit securities, lacking 'standing', trading my life labor and property for my credit on the stock market all in violation of the SEC statutes with heavy criminal sanctions. Not to mention that the deals caused you to violate the Fair Debt Collections Act. And that the statutes you quoted in the passport case do not have any penalty sanctions attached to them as your office admitted. Not to mention that both Pleas are void of the CFR's again and nor were they placed into The Federal Registry in violation of Act. Fraud vitiates everything from its inception. Incidentally, did you ask the FBI while you had them on the phone if it was Kosher to prosecute manifold cases with Counterfeit Securities as you have done over years and what were the potential penalties you could incur, for doing so? Oh, you forgot? Don't worry, I have the FBI witnesses for you at the evidentiary hearings. I think their testimony under oath will be added to my Civil Case. Lastly, I will be notifying and filing a complaint against you to the Inspector in Washington, D.C. and this District Court of your continued harassment and threats of intimidation I am sure this violation in your jacket will be of value to you. I will send you a copy of my letter to them (the Clerk of the Court) and I will include a copy for them of my Civil Case action that I have against also a copy of the transcripts of Magistrate Schroeder calling you abusive and vindictive, etc., so evaluate your conduct in full.

- District Office Locations
- Email Brian

- **Older Cities Task Force**
  *Co-Chair Rep. Higgins*
- **Cancer Caucus**
- **Great Lakes Task Force**
- **Northeast-Midwest Congressional Coalition**
- **Ways & Means Committee**
- **Democratic Caucus**

Agriculture ArtCompetition Arts BethlehemSteel Budget Chautauqua Community Development CongressOnYourCorner Consumer Issues Economic Development Education Energy Environment FAA Federal Issues FederalFunding FEMA FinancialRegulation GreatLakes Health Care HomelandSecurity Hydropower In Focus IntheDistrict Legislation PassportOffice PeaceBridge RecoveryAct Senior Citizens SmallBusiness Social Security Transportation VacantHousing Veterans Waterfront WaysMeansCommittee WNY



**Washington, DC Office**
431 Cannon HOB
Washington, DC 20515
Phone: 202-225-3306
Fax: 202-226-0347

**Erie County Office**
Larkin at Exchange
726 Exchange Street
Suite 601
Buffalo, NY 14210
Phone: 716-852-3501
Fax: 716-852-3929

**Chautauqua County Office**
Fenton Building
2 East Second Street
Suite 300
Jamestown, NY 14701
Phone: 716-484-0729
Fax: 716-484-1049

Site Map | Accessibility | Feeds | Privacy | Tools